Opinion issued January 14, 2010 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-09-00021-CV
__________
 
CASH RENT-A-CAR, INC., Appellant
 
V.
 
OLD AMERICAN COUNTY MUTUAL FIRE INSURANCE COMPANY
AND AFFIRMATIVE INSURANCE SERVICES, INC., Appellees
 

 
 
On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2007-40839
 

 
 
MEMORANDUM OPINION
          Appellant, Cash Rent-A-Car (“RAC”), challenges the trial court’s rendition of
summary judgment in favor of appellees, Old American County Mutual Insurance
Company (“Old American”) and Affirmative Insurance Services, Inc. (“Affirmative”),
in RAC’s suit against appellees for conversion, trespass, fraud, negligent
misrepresentation, breach of contract and bailment agreement, and violations of the
Texas Theft Liability Act,


 the Texas Deceptive Trade Practices Act (“DTPA”),


 and
the Texas Insurance Code.


 In two issues, RAC contends that the trial court erred in
granting summary judgment in favor of appellees because the summary judgment
evidence presented a genuine issue of material fact on all of RAC’s claims and
because appellees did not file a summary judgment motion addressing all of RAC’s
claims. 
          We affirm in part, reverse in part, and remand for proceedings consistent with
our opinion. 
Factual and Procedural Background
          In its third amended petition, the live petition at the time the trial court granted
summary judgment in favor of appellees, RAC alleged that Joseph Dominick IV



rented a car from RAC and, at the time of renting the car, he presented a Texas
insurance identification card “indicating that the rented vehicle would be insured” by
Old American. RAC further alleged that “[c]overage was confirmed through [Old
American and Affirmative’s] agents” at the time that Joseph Dominick IV rented the
car. Joseph Dominick IV was subsequently involved in an automobile accident while
driving the car. 
          RAC further alleged that Old American, through its agent, Affirmative,
“acknowledged receipt of” RAC’s claim following the accident and took “possession
of the rented vehicle, which was a total loss.” However, after Old American and
Affirmative settled the claims of multiple passengers who were riding in the car at the
time of the accident, Old American and Affirmative asserted that Joseph Dominick
IV was not insured under the policy. Based on this contention, Old American and
Affirmative refused to pay for damages to the car; they also failed to return the car to
RAC, allegedly because they had already “released the vehicle for sale at auction.” 
          RAC asserted a breach of contract claim against Joseph Dominick IV, alleging
that he had breached the rental agreement by representing that he had coverage with
Old American and, in renting the car, he had agreed to be responsible for any
damages and any loss of use.


 RAC asserted claims of conversion, violation of the
Texas Theft Liability Act, trespass to personal property, and breach of a bailment
agreement against Old American and Affirmative, alleging that they took possession
and maintained control of the car and failed to return it. RAC also asserted that Old
American was responsible for any loss of use and repairs to the car as well as any
statutory damages under the Theft Liability Act. In support of its breach of bailment
agreement claim, RAC alleged that it had permitted Old American and Affirmative
to transport the car to a storage facility so that they could appraise the damage and
Old American and Affirmative destroyed or sold the car without RAC’s consent.
          RAC also alleged that Old American and Affirmative had committed fraud and
negligent misrepresentations by confirming “that there was coverage before the
vehicle was rented” and then taking the position, after the accident and after towing
the car to its storage yard, “that there was no coverage.” RAC asserted that “the only
driver for which a premium could have been paid was” Joseph Dominick IV because
the alleged insured, Joseph Dominick, “was disabled and unable to drive.” RAC also
asserted that Old American and Affirmative failed to exercise reasonable care in
making representations regarding insurance coverage. In conjunction with its
misrepresentation and other claims, RAC, making non-specific references to
violations of the Texas Deceptive Trade Practices Act and the Insurance Code,
contended that “[t]he conduct of Defendants is not only an unfair and/or deceptive act
or practice under the Texas Insurance Code and the Texas Deceptive Trade Practices
Act, but is also fraudulent.”
          In a section of its petition entitled “agency,” RAC alleged that Affirmative and
Brooke Agency Services (“Brooke”) or Gallery Insurance were acting as agents as
Old American and, thus, Old American was responsible for their conduct. RAC
sought as its damages for all of its claims the loss of rental income, repair costs, and
“substantial exemplary damages.”
          RAC attached to its petition a copy of the rental agreement executed by
“Joseph Dominick” and a copy of the insurance identification card, which identifies
the insurer as Old American, the agent as Brooke, the named insured as “Joseph
Dominick,” and the “Drivers” as “Joseph Dominick-Included.”



          Old American and Affirmative attached to their summary judgment motion


 the
affidavit of Reginald Bibb, an Affirmative representative. Bibb testified that RAC
had rented a car to “Joseph Dominick IV,” who “presented an insurance card with the
name Joseph Dominick,” was “an insured” under an Affirmative policy, and was
involved in an automobile accident with the rented car. Bibb noted that the car was
“totally destroyed,” Joseph Dominick IV reported the accident to Affirmative,
Affirmative began investigating the claim, the car “was towed to a storage yard,” and
Affirmative settled the claims of the car’s passengers. Bibb explained that during the
investigation, Affirmative learned that Joseph Dominick IV and Joseph Dominick
“were different people” and that Joseph Dominick IV “was possibly not insured by
Affirmative.” (Emphasis added). Bibb further testified,
Affirmative began investigating whether the driver of [RAC’s] vehicle
was insured by Affirmative. Affirmative did not initially dispose of the
totaled vehicle because the investigation was not complete. [RAC] did
not ask for the vehicle and did not request the vehicle be returned.
Before affirmative finished its investigation, [RAC] filed this lawsuit
. . . . 
 
          . . . .
 
Affirmative took control of the vehicle and [RAC] never demanded the
return of the vehicle. Affirmative never refused to return the vehicle. 
Affirmative did not unlawfully take the vehicle. Affirmative simply
possessed the vehicle while it investigated the insurance coverage of
Joseph Dominick IV. [RAC] never filed any criminal charges against
Affirmative and [RAC] knew where the vehicle was the entire time.
 
          There is no contract between [RAC] and Affirmative.
 
Affirmative did not make false representations to [RAC] regarding
coverage. The only possible representations made by Affirmative to
[RAC] . . . was to confirm that “Joseph Dominick was insured by
Affirmative.” Joseph Dominick was an insured by Affirmative.
 
(Emphasis added). 
          Based primarily upon Bibb’s testimony, Old American and Affirmative argued
that RAC could not recover for conversion, trespass, or theft because Old American
and Affirmative did not unlawfully take the car, RAC knew where the car was, RAC
never demanded return of the car, and Old American and Affirmative never refused
to return the car. Old American and Affirmative further argued that (1) RAC’s fraud
and misrepresentation claims failed because Joseph Dominick was in fact an insured
and Affirmative did not make false representations to RAC; (2) RAC could not
recover for breach of contract because RAC did not have a contract with Old
American and Affirmative;


 (3) RAC’s DTPA claim failed as a matter of law because
RAC was not a consumer that had sought or acquired goods or services from them;
(4) RAC’s Insurance Code claims under Chapter 542 of the code failed because RAC
was not an insured and did not have a first-party claim under the policy; (5) RAC
could not recover its loss of use damages because the car had been totally destroyed;
and (6) RAC’s direct claims against them failed as a matter of law.
          In its response to the summary judgment motion, RAC attached the affidavit
of Joseph Edmond, RAC’s owner. Edmond testified that “Joseph Dominick” came
to RAC to rent a car and filled out an application and he presented an insurance card
that identified him as an insured with Old American. Edmond contacted Brooke and
confirmed that Joseph Dominick was an insured, but Brooke further told Edmond that
Joseph Dominick did not have “UM/UIM” coverage. RAC then asked Joseph
Dominick to go purchase “UM/UIM” coverage and return with proof of such
coverage, and Joseph Dominick left RAC and returned shortly thereafter with proof
that he had paid a premium for “UM/UIM” coverage with Old American. Edmond
again contacted Brooke, who confirmed that Old American would insure Joseph
Dominick.


 Edmond further testified that after the accident, he spoke with
Affirmative, an agent of Old American, and gave Affirmative permission to move the
car to a storage lot. However, Affirmative never advised him of the location of the
car, he did not know the location of the car despite his repeated inquiries, he had
requested the location numerous times, he had requested the return of the car or
payment for the total loss of the car, and Old American and Affirmative had not told
him the location of the car or paid for the car. Finally, Edmond testified that he had
sustained lost profits as a result of not having the car in his possession, Old American
and Affirmative had sent him letters advising him that they had paid out bodily injury
claims to individuals who were passengers in the car, Old American and Affirmative
subsequently claimed that there was no insurance coverage for the car, and he had
believed that Affirmative would have either returned the car to RAC or paid the
claim.
          RAC also contended in its response that it was entitled to recover for its loss
of use damages, it had agreements with Affirmative such as a “an oral contract to
insure” and bailment agreement that allowed it to pursue a breach of contract claim,
and it had standing to pursue DTPA and Insurance Code claims. 
          In its original order granting Old American and Affirmative’s summary
judgment, the trial court stated that Old American and Affirmative were not liable for
“breach of contract, conversion, theft, trespass to personal property, misrepresentation
of insurance policy, DTPA violations, Insurance Code violations, fraud, or negligent
misrepresentation.” However, after determining that RAC was not entitled to recover
on any of its claims, the trial court further stated that RAC was “entitled to recover
the value of the totaled vehicle,” although it was not entitled to “recover the loss of
use.” The trial court subsequently entered an amended order granting Old American
and Affirmative’s summary judgment, in which it stated that Old American and
Affirmative were “not liable in this case on any of [RAC’s] causes of action” and that
RAC was not entitled to recover any damages. 
Standard of Review
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When a defendant moves for summary judgment, it must either (1) disprove
at least one essential element of the plaintiff's cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff's cause of action. Cathey, 900 S.W.2d at 341; Yazdchi v. Bank
One, Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied). When deciding whether there is a disputed, material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true.
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985). Every
reasonable inference must be indulged in favor of the non-movant and any doubts
must be resolved in its favor. Id. at 549. Moreover, a summary judgment must stand
or fall on the grounds expressly presented in the motion. McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 339–41 (Tex. 1993).
Summary Judgment
          In two issues, RAC argues that the trial court erred in granting summary
judgment in favor of appellees because the summary judgment evidence presented a
genuine issue of material fact on RAC’s claims and because appellees did not file a
summary judgment motion addressing all of RAC’s claims. 
Breach of Bailment Agreement or Oral Contract
          After Old American and Affirmative filed their summary judgment motion,
RAC filed an amended petition and included a claim for breach of bailment
agreement or an oral contract based upon new factual allegations. In the amended
petition, RAC alleged that there was an oral agreement to allow Old American and
Affirmative to tow and store the car at a storage yard based upon RAC’s expectation
of coverage and payment for damages or the return of the car pending an
investigation. Old American and Affirmative did not file an amended summary
judgment motion to address this claim, but instead attempted to address it solely in
a reply. Claims pleaded after a summary judgment is filed must be addressed by an
amended or supplemental motion, not by reply brief. McConnell, 858 S.W.2d at
339–41 (providing that summary judgment grounds must appear in motion, not in
briefs or evidence); Blancett v. Lagniappe Ventures, Inc., 177 S.W.3d 584, 592 (Tex.
App.—Houston [1st Dist.] 2005, no pet.); Elliott v. Methodist Hosp., 54 S.W.3d 789,
794 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). 
          However, even if we were to determine that we could consider the propriety of the
summary judgment on RAC’s breach of bailment agreement or breach of contract claim, we
conclude that, in light of the additional factual allegations, fact issues remain as to whether
Old American and Affirmative breached the alleged agreement regarding the towing and
storing of the car. Indulging all reasonable inferences in favor of RAC, Edmond’s testimony
provides some evidence of an agreement formed between the parties over the right to control
the car after the accident. Old American and Affirmative did not dispute that after taking
control of the car they disposed of the car, and they did not present any evidence that they
were entitled to dispose of the car. Instead, through Bibb’s affidavit, Affirmative presented
evidence only that it did not “initially” dispose of the car. In sum, Old American and
Affirmative did not present evidence defeating RAC’s breach of contract or bailment
agreement claim as a matter of law, and they did not present any evidence regarding what
happened to the car after denying coverage for RAC’s property claim. Accordingly, we
hold that the trial court erred in granting summary judgment on RAC’s claim for
breach of a bailment agreement and contract.
Conversion, Theft, and Trespass
          The elements of a conversion claim are (1) the plaintiff owned or had
possession of the property or entitlement to possession; (2) the defendant unlawfully
and without authorization assumed and exercised control over the property to the
exclusion of, or inconsistent with, the plaintiff’s rights as an owner; (3) the plaintiff
demanded return of the property; and (4) the defendant refused to return the property. 
Khorshid, Inc. v. Christian, 257 S.W.3d 748, 758–59 (Tex. App.—Dallas 2008, no
pet.). 
          Under the Theft Liability Act, a person who commits theft by unlawfully
appropriating property with intent to deprive the owner of property is liable for the
resulting damages. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002(2), 134.003(a)
(Vernon 2005); Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2009).
Appropriation of property is unlawful if it is without the owner’s effective consent. 
Id. § 31.03(b)(1). 
          “Trespass to personalty is an injury to, or interference with, possession of the
property, unlawfully, with or without the exercise of physical force.” Russell v. Am.
Real Estate Corp., 89 S.W.3d 204, 210 (Tex. App.—Corpus Christi 2002, no pet.)
(citing Jamison v. Nat’l Loan Investors, L.P., 4 S.W.3d 465, 469 n.2 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied)). Destruction of, or injury to, personal
property, regardless of negligence, may be a trespass. Id.
          The summary judgment record reveals the existence of material issues of fact
regarding each of these claims that the trial court could not have properly resolved
by summary judgment. First, the record establishes a fact issue as to whether Joseph
Dominick IV was an insured under the Old American policy. RAC argued in its
summary judgment response that there was in fact coverage, and Edmond testified to
this in his affidavit. Affirmative presented evidence only that it had discovered that
the driver of RAC’s rental car “was possibly not insured by Affirmative.” Bibb,
Affirmative’s representative, also testified in his affidavit that the investigation was
not concluded at the time that the suit was filed, and he never testified as to whether
the investigation was ever concluded or whether Affirmative ever made a final
coverage determination. Moreover, there are documents from the insurance file,
which are attached to Edmond’s affidavit, indicating that after Affirmative notified
“Joseph Dominick” or “Joseph Dominick IV” of the lack of coverage, the Dominicks
challenged this determination, asserting that they had a declaration page showing
coverage for both of them.


 There is nothing in the record to resolve this question. 
We also note that the policy is not contained in the record, so we cannot review it
ourselves to determine if coverage, or the lack of coverage, is established by the
policy language. 
          Second, the record establishes a fact issue as to whether Old American and
Affirmative unlawfully retained or refused to disclose to RAC the location of its car. 
The record also does not establish, as a matter of law, that the car was a total loss or
that, even if the car could be classified as a total loss, that Old American and
Affirmative could lawfully refuse to disclose to RAC the location of its property. Old
American and Affirmative’s summary judgment motion on these claims is based upon
the false assertion that it was “undisputed” that RAC knew the location of its car.
          In sum, the record before us reveals a fact issue as to whether there was
coverage for Joseph Dominick IV, the driver of the rental car, and whether Old
American and Affirmative unlawfully obtained control or refused to disclose the
location of the car to RAC or unlawfully disposed of RAC’s car. Accordingly, we
hold that the trial court erred in granting summary judgment on RAC’s claims for
conversion, violations of the Theft Liability Act, and trespass.
Fraud and Negligent Misrepresentations
          In order to prove fraud, a party must show that (1) a material representation
was made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth
and as a positive assertion; (4) the speaker made the representation with the intent
that the other party should act upon it; (5) the party acted in reliance on the
representation; and (6) the party thereby suffered injury. In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 758 (Tex. 2001). Fraud by nondisclosure is a subcategory of fraud.
See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997). 
          In order to prove negligent misrepresentation, a plaintiff must show that (1) the
defendant made a representation in the course of its business, or in a transaction in
which it has a pecuniary interest, (2) the defendant supplied “false information” for
the guidance of others in their business, (3) the defendant did not exercise reasonable
care or competence in obtaining or communicating the information, and (4) the
plaintiff suffered a pecuniary loss by justifiably relying on the representation. Henry
Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n. 24 (Tex. 2002) (citing Fed. Land
Bank Ass’n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)).
          Here, Old American and Affirmative sought summary judgment on these
claims solely on the basis that the summary judgment evidence established as a matter
of law that they “did not make false representations.” However, RAC presented
evidence that it engaged in phone conversations with Affirmative representatives,
during these conversations RAC permitted Affirmative to move the car to a storage
facility based upon an expectation of coverage or return of the car, Affirmative took
“control” of the car and moved it to an undisclosed location, Affirmative refused to
inform RAC of the location of the car even after RAC made numerous requests, and
Affirmative failed to pay RAC for the car or return it, apparently contending that the
car was a total loss and that RAC was not entitled to its return. RAC alleged in its
petition that Old American and Affirmative had since sold the car at auction, and Old
American and Affirmative only presented evidence that they did not “initially”
dispose of the car. Old American and Affirmative cite their conflicting evidence that
RAC knew the location of the car and that they had not refused to return it. They also
argue on appeal that the car was a total loss. 
          However, we have determined that the record does not establish that RAC’s car
was a total loss or that, even if it could have been classified that it was a total loss,
RAC was not entitled to a return of its property. Moreover, Old American and
Affirmative sought summary judgment on these claims solely on the basis that they
did not make false representations. Indulging every reasonable inference in favor of
RAC and resolving any doubts in its favor, we conclude that RAC has presented a
fact issue on whether Old American and Affirmative made any misrepresentations. 
Accordingly, we hold that the trial court erred in granting Old American and
Affirmative’s summary judgment motion on RAC’s fraud and negligent
misrepresentation claims.



DTPA and Insurance Code
          In its petition, RAC did not articulate the basis for its claims under the DTPA
and Insurance Code.


 Instead, it made only general references to these statutes in
the sections of its petition related to other claims. Without citation to any specific
provisions or conduct of Old American and Affirmative, RAC generally stated that
“[t]he conduct of Defendants was an unfair and/or deceptive act or practice under the
Texas Insurance Code and the Texas Deceptive Trade Practices Act.” Old American
and Affirmative did not file special exceptions to RAC’s petition and did not seek a
no-evidence summary judgment. See Tex. R. Civ. P. 91; 166a(i). Instead, Old
American and Affirmative sought summary judgment on RAC’s DTPA and Insurance
Code claims on specific grounds. First, Old American and Affirmative argued that
RAC’s DTPA claims failed as a matter of law because RAC did not qualify as a
consumer. Second, Old American and Affirmative argued that RAC’s Insurance
Code claims failed as a matter of law because “[t]o pursue a cause of action under
Chapter 542 of the Texas Insurance Code, [RAC] must establish it had a [first-party]
claim under an insurance policy.” 
          Consumer status is an essential element of a DTPA claim. Rivera v. S. Green
Ltd. P’ship, 208 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)
(citing Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995)). 
A consumer is an individual who seeks or acquires goods or services by purchase or
lease. Id.; Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp. 2009)
(“‘Consumer’ means an individual, partnership, corporation, this state, or a
subdivision or agency of this state who seeks or acquires by purchase or lease, any
goods or services, except that the term does not include a business consumer that has
assets of $25 million or more, or that is owned or controlled by a corporation or entity
with assets of $25 million or more.”). Whether a plaintiff is a consumer under the
DTPA is a question of law for the court to decide. Rivera, 208 S.W.3d at 21. 
          On appeal, RAC suggests that it “sought or acquired insurance coverage” from
Old American and Affirmative, and, based upon this theory, it argues that it was a
consumer of insurance and it should be allowed to pursue its DTPA claims. RAC
also argued in its summary judgment response that “the unique facts of this matter
strongly suggest that [RAC] sought or acquired insurance coverage.” But there is no
summary judgment evidence to support the assertion that RAC acquired insurance
from Old American and Affirmative. In fact, Edmond’s affidavit clearly established
that RAC considered Joseph Dominick IV as the party acquiring the insurance. 
RAC’s own rental agreement also recognizes that Old American was the insurer for
“Joseph Dominick,” not for RAC.


 Moreover, RAC is now seeking, at least in part,
to recover insurance proceeds based upon the allegation that Joseph Dominick IV was
an insured of Old American and Affirmative. “Texas law recognizes that a party
whose only relation to an insurance policy is to seek policy proceeds is not a
‘consumer.’” Rotating Servs. Indus., Inc. v. Harris, 245 S.W.3d 476, 486 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied) (citing Transp. Ins. Co. v. Faircloth,
898 S.W.2d 269, 274 (Tex. 1995)).
          RAC argues that even if it was not a consumer of insurance, section
17.46(b)(12) of the DTPA allows RAC to pursue its DTPA claims because they were
“brought in connection” with RAC’s Insurance Code claims. In support of its
argument, RAC cites Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 387 (Tex. 2000). 
However, neither Casteel, nor any of the other authorities relied upon by RAC, permit
RAC to proceed on its DTPA claims without consumer status. Accordingly, we hold
that the trial court did not err in granting summary judgment on RAC’s DTPA claims.
          In regard to RAC’s Insurance Code claims, we construe Old American and
Affirmative’s summary judgment motion as specifically attacking these claims only
to the extent that RAC pleaded such claims under Chapter 542 of the Insurance
Code.


 Chapter 542 addresses claims related to unfair claims settlement practices
and prompt payment requirements. See Tex. Ins. Code Ann. §§ 542.001– 542.061
(Vernon 2009). We agree that, with respect to any claims pleaded under Chapter 542
related to claims handling practices or statutory prompt payment violations, RAC was
not entitled to pursue those claims. See id. § 542.051(2) (defining “claim” under that
subchapter as “first party claim that: (A) is made by an insured or policyholder under
an insurance policy or contract or by a beneficiary named in the policy or contract;
and (B) must be paid by the insurer directly to the insured or beneficiary”); Evanston
Ins. Co. v. ATOFINA Petrochemicals, Inc., 256 S.W.3d 660, 674–75 (Tex. 2008);
Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269, 273–74 (Tex. 1995); Allstate Ins. Co.
v. Watson, 876 S.W.2d 145, 149–50 (Tex. 1994); Caplinger v. Allstate Ins. Co., 140
S.W.3d 927, 931 (Tex. App.—Dallas 2004, pet. denied). However, Old American
and Affirmative did not seek summary judgment on any Insurance Code claims
arising under Chapter 541, which addresses unfair or deceptive acts or practices. 
Accordingly, we hold that the trial court erred to the extent that it granted summary
judgment on any such claims. 
 
 
 
 
 
 
 
 
 
 
 
 
Conclusion
          In sum, we overrule the portion of RAC’s two issues challenging the trial
court’s summary judgment on its DTPA claims and Insurance Code claims to the
extent that those claims were based upon Chapter 542 of the Insurance Code. We
sustain the remaining portion of RAC’s two issues challenging the trial court’s
summary judgment on RAC’s claims for breach of bailment agreement or contract,
conversion, theft, trespass, fraud, negligent misrepresentation, and for violations of
the Insurance Code to the extent those claims are based upon provisions outside of
Chapter 542.                                              
          We affirm the portion of the trial court’s judgment on RAC’s DTPA and
Insurance Code claims arising under Chapter 542, we reverse the remaining portions
of the judgment, and we remand for further proceedings consistent with our opinion.
 



                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.